IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 12, 2005

## HAROLD LINDELL SCHARKLEY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Robertson County**
**Nos. 99-0354, 99-0417, 00-0140, 01-0038    John H. Gasaway, III, Judge**

---

**No. M2004-01268-CCA-R3-PC - Filed June 10, 2005**

---

The Petitioner, Harold Lindell Scharkley, filed a petition for post-conviction relief contending that his guilty pleas were involuntary and unknowing because he received ineffective assistance of counsel and because the trial court failed to follow the requirements of Rule 11 of the Tennessee Rules of Criminal Procedure. After a hearing, the post-conviction court denied the Petitioner's request for post-conviction relief. Finding no reversible error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

William F. Kroeger, Springfield, Tennessee, for the appellant, Harold Lindell Scharkley.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the denial of the Petitioner's petition for post-conviction relief. In 2001, the Petitioner pled guilty to five charges in four separate cases. In October 1999, in case number 99-0354, the Robertson County grand jury indicted the Petitioner for one count of possession with intent to sell .5 grams or more of cocaine, and one count of possession with intent to deliver .5 grams or more of cocaine. In case number 99-0417, the grand jury indicted the Petitioner for assault. In April 2000, in case number 00-0140, the Petitioner was indicted for one count of possession with intent to sell .5 grams or more of cocaine, one count of possession with intent to deliver .5 grams or more of cocaine, and one count of possession of drug paraphernalia. In January 2001, in case number 01-0038, the Defendant was indicted on twenty-three counts of statutory rape occurring

between July 1996 and May 1998.

On October 8, 2001, before the Petitioner's trial in case number 00-0140 began, the Petitioner accepted a plea agreement covering all four of the Petitioner's indictments. In accordance with the plea agreement, the Petitioner pled guilty to assault, two counts of possession with intent to sell .5 grams or more of cocaine, and two counts of statutory rape. At the guilty plea submission hearing, the following colloquy took place: The trial court explained the charges and sentence ranges to the Petitioner, and it noted the offense dates for the charges against the Petitioner. The trial court explained that the minimum sentence that the Petitioner would receive was sixteen years, eleven months, and twenty-nine days, and the Petitioner said that he understood. The trial court informed the Petitioner of his right to plead not guilty, demand a jury trial, and require the State to prove his guilt beyond a reasonable doubt, and the Petitioner affirmed that he understood these rights. The Petitioner informed the trial court that he understood that he had the right to cross-examine the State's witnesses and to subpoena witnesses to testify on his behalf. The trial court asked if the Petitioner understood that he would be waiving these rights by pleading guilty, and the Petitioner affirmed that he understood and that he wished to waive those rights. The Petitioner said that he understood his right to representation by an attorney. He said that he understood that he had the right to testify on his own behalf, but that no inference of guilt could be drawn from his not testifying. Further, the Petitioner affirmed that he understood that, by pleading guilty, he was waiving his right and privilege against self-incrimination.

The trial court explained that the Petitioner would not be eligible for probation because his sentence would be over eight years, and the court asked if the Petitioner understood that he could go to prison for "a long time." The Petitioner affirmed that he understood this, and he said that he understood that he would be a convicted felon for life. The trial court explained, and gave examples of, how the convictions could be used in the future to enhance the sentence for any subsequent conviction, and the Petitioner said that he understood. The Petitioner told the trial court that he understood that he was giving up his right to appeal, and to appeal with the assistance of counsel. The trial court explained the sentencing considerations, and it informed the Petitioner that, because the Petitioner was on bond for one of the offenses when he committed another, the sentences for those convictions would run consecutively, for a minimum possible sentence of sixteen years, eleven months and twenty-nine days. The Petitioner affirmed that he understood the possible sentence and sentencing considerations. The Petitioner responded affirmatively when the trial court asked whether the Petitioner had had enough time to discuss the facts and circumstances of all the cases involved in the plea agreement, and he denied having any difficulty understanding the information discussed with him by his attorney or the trial court.

The Petitioner asked the trial court to accept his guilty pleas. The Petitioner said that he was guilty of the assault in case number 99-0417. In case number 99-0354, the Petitioner entered a "best interest"[1] plea to one count of possession with the intent to sell .5 grams or more of cocaine. The

---

[1]See generally, North Carolina v. Alford, 400 U.S. 25 (1970); Dortch v. State, 705 S.W.2d 687 (Tenn. Crim. App. 1985).

trial court explained that, if the Petitioner entered a best interest plea, the trial court would find the Petitioner guilty, and the Petitioner affirmed that he wished to enter such a plea. The Petitioner said that he was guilty of one count of possession with the intent to sell .5 grams or more of cocaine, in case number 00-0140. The State explained that, in case number 01-0038, the Petitioner's statutory rape charges arose from his fathering a child with a thirteen year old girl born on September 16, 1982, when the Petitioner was twenty-one years old. The Petitioner admitted that he was guilty of two counts of statutory rape. The trial court accepted the Petitioner's guilty pleas and set the case for a sentencing hearing.

Following the sentencing hearing, the trial court sentenced the Petitioner to eleven months and twenty-nine days for the assault conviction and one year for each of the statutory rape convictions. The trial court sentenced the Petitioner to eight years and six months for one of the two possession with intent to sell convictions and nine years and six months for the second possession with intent to sell conviction. The trial court ordered the two sentences for possession with intent to sell to run consecutively to each other, and it ordered the sentences for the assault and statutory rape convictions to run concurrently with the eight year and six month sentence for possession with intent to sell, for an effective sentence of eighteen years. The trial court entered the judgments on December 3, 2001, and the Petitioner did not appeal his sentences. Subsequently, the Petitioner timely filed a petition for post-conviction relief.

On May 7, 2004, at the Petitioner's post-conviction relief hearing, the following evidence was presented: The Petitioner testified that he was twenty-nine years old and had a tenth grade education. The Petitioner said that, when he pled guilty in 2001, he was represented by retained counsel, David Gold ("Counsel"). The Petitioner testified that he never discussed with Counsel whether Counsel investigated his case, and he had no knowledge of whether Counsel interviewed any witnesses or police officers involved in his case. He said that he and Counsel never discussed filing pre-trial motions. He did not know whether Counsel ever spoke to his co-defendants' attorneys.[2] The Petitioner testified that he went to Counsel's office three or four times. He said that, on his first visit, he and Counsel only discussed Counsel's fee, and they did not discuss the facts of the case. The Petitioner recalled that he went to Counsel's office a second time and made a payment towards Counsel's retainer, but he did not recall discussing the case with Counsel at that time. He said that he made a third payment when Counsel appeared in court with the Petitioner on the day he pled guilty. The Petitioner testified that he and Counsel never discussed the facts of his case prior to the trial date, and there was no occasion when Counsel requested a meeting that the Petitioner did not attend. He said that he appeared in court on the day one of his cases was set for trial, and the State made a "package deal" plea offer for all four of his pending cases. He recalled that he discussed the State's offer with Counsel in the back of the courtroom for less than ten minutes. The Petitioner testified that Counsel explained that the State's offer was an open plea. The Petitioner said that Counsel tried to explain what an open plea was, but the Petitioner did not understand. The Petitioner said that Counsel explained "consecutive sentencing," but the Petitioner understood this to mean that the sentences ran together. He denied that Counsel discussed with him the possible

---

[2]Three other men were charged along with the Petitioner in case number 00-0140.

-3-

sentence he could receive at trial versus the sentence he could receive if he accepted the plea agreement.

The Petitioner recalled telling the trial court, at the plea submission hearing, that he understood the questions the trial court asked, but he said that he did not actually understand. He testified that he informed the trial court that he wanted to plead guilty because Counsel told him that he would "receive either probation or boot camp." The Petitioner said that he entered a best interest plea because he thought it was another way to plead not guilty, and he said that he informed Counsel that he was not guilty of the charges in that case, case number 99-0354. The Petitioner stated that he did not understand that two of his sentences would be consecutive. He said that, when the trial court explained that he would receive a minimum of sixteen years, he wanted to change his plea, but he did not ask his attorney if he could do so. The Petitioner recalled that Counsel told him that he could receive "forty something years" if he went to trial, and the Petitioner said that the prospect of forty years scared him. He testified that Counsel said the plea agreement was the best deal possible. The Petitioner also said that Counsel never discussed with him the possibility of appealing his sentence, and he did not know whether Counsel ever filed a notice of appeal on his behalf.

On cross-examination, the Petitioner testified that he completed the tenth grade in a resource center because he was a slow learner, but he had passing grades in all of his courses, including English. The Petitioner admitted that he understood that, after pleading guilty, he would have a sentencing hearing and the trial court would set his sentence. He denied that Counsel told him that he could receive a seventy year sentence. He said that he knew he had twenty-three charges of statutory rape that each carried a sentence of one to two years. The Petitioner remembered the trial court stating that two of the Petitioner's sentences would run consecutively because he committed one crime while on bond for another, but the Petitioner again said that he thought consecutive meant that the sentences would run at the same time. He remembered that the State and the trial court reviewed the charges against him and the specifics of the plea agreement. He recalled that, before he pled guilty, the trial court stated that his bond would be revoked and that it did not see any possible sentence alternative to the Department of Correction. He admitted that he signed the guilty plea paperwork. On redirect examination, the Petitioner testified that he was frightened the day he pled guilty. He said that relied on the advice of Counsel, and he did not understand what was happening.

Counsel testified that he has been practicing law in Nashville and the surrounding counties for six years. Counsel said that he was retained to represent the Petitioner in two drug possession cases, and he agreed to include the statutory rape case and the assault case at no extra charge. He said that he knew at that time that there was a possibility of four separate jury trials. Counsel testified that he investigated the drug possession cases, and he explained that he reviewed the State's discovery packet with his legal assistant and the Petitioner. Counsel also recalled that he conducted legal research on the Petitioner's cases. He said that he researched the possibility of suppressing the evidence, specifically the audio tape recording of the cocaine sale and evidence obtained during a search of the trailer where the Petitioner was arrested, but Counsel determined that suppressing the evidence was not likely. Counsel said that he discussed with the Petitioner the possibility that the

-4-

confidential informant would not show up to testify, and, therefore, the State would be unable to authenticate the audio tape recording of the offense. Counsel said that he did not prepare for trial on the Petitioner's other drug case because it was not yet set for trial and he wanted to finish the Petitioner's first case before doing so. He did not remember whether he spoke to any of the co-defendants' attorneys regarding the second case. He did not interview the police officers involved in either of the drug cases, but he did speak briefly with those officers who came to testify on the Petitioner's trial date. He said that the Petitioner told him the identity of the confidential informant, but he did not attempt to interview him. Counsel recalled that he investigated the confidential informant, and he discovered an extensive criminal record. He said that the Petitioner gave him the names of the other people present when the confidential informant purchased the drugs, but Counsel said that none of those people had a listed phone number, and he did not investigate them any further.

Counsel said that he met with the Petitioner three times at Counsel's office and numerous times at the courthouse when he and the Petitioner appeared for hearings and arraignments in the various cases. He said that the Petitioner originally hired him for a third drug possession case that was dismissed after Counsel filed a successful motion to suppress evidence. He said that he and the Petitioner discussed the facts of the first drug possession case before he quoted the Petitioner a fee for his representation. Counsel recalled that he and the Petitioner discussed the second drug possession case at the second meeting at Counsel's office. At the third meeting, he and the Petitioner discussed the statutory rape and assault cases. Counsel said that the first two meetings lasted at least an hour or so each, but the third meeting was only around half an hour long. Counsel recalled that the Petitioner was the father of three children with the victim in the statutory rape case, and he said that it "was pretty easy to decide what I was going to do on that one." Counsel said that he planned to wait until the outcome of the drug possession cases to really prepare the defense in the statutory rape and assault cases, but he said that he thought the Petitioner's best chance in those cases was that the victim would not show up to testify.

Counsel recalled that the Petitioner said that he was not guilty of the drug possession case that involved a search warrant, and that the Petitioner said that he was present but not involved in the illegal conduct. Counsel agreed that, had the Petitioner been found not guilty of the charges in this second drug possession case, to which the Petitioner claimed innocence, the Petitioner's sentences would not have been consecutive. Counsel testified, however, that he did not believe it likely that the Petitioner would have been acquitted of those charges at trial. Counsel recalled that, when the State offered the plea agreement, he discussed the offer with the Petitioner for about fifteen minutes at the back of the courtroom. Counsel denied telling the Petitioner that he would receive probation. He explained that he told the Petitioner that, if the Petitioner was only convicted on one drug possession case, the Petitioner would be eligible for community corrections or boot camp. Counsel said that he told the Petitioner, however, that with the two class B felony convictions, two class E felony convictions, and the misdemeanor assault conviction, the Petitioner would not be eligible for boot camp. Counsel admitted that, at the sentencing hearing, he argued for alternatives to prison, including boot camp, because he hoped the trial court might make an exception, but he denied telling the Petitioner that boot camp or probation was possible.

Counsel said that he spent around four hours discussing with the Petitioner the case that was set for trial the morning that the Petitioner pled guilty. He said that the Petitioner was difficult to reach by phone, and the mailing address Counsel had was incorrect. Counsel testified that he was prepared for trial on the Petitioner's trial date. He said that he thought the Petitioner understood his options and rights regarding his trial and defense. He recalled that he explained to the Petitioner that the Petitioner could not maintain his innocence and plead guilty, and he told the Petitioner that, if the Petitioner could not, in good conscience, tell the trial court under oath that he was guilty of the charges, he could enter a best interest guilty plea. Counsel said that he explained that this would have the exact same effect as a guilty plea. Counsel explained that he felt the plea was in the Petitioner's best interest because the Petitioner was facing seventy years in prison. He said that the Petitioner appeared to have reservations about pleading guilty, but Counsel said that the Petitioner's reservations were primarily remorse over being caught in illegal conduct. Counsel recalled that, after the sentencing hearing, he told the Petitioner that he could appeal and discussed the time limits on an appeal. He said that he told the Petitioner that he would file the appeal if the Petitioner wished, and he said that he gave the Petitioner his office and mobile phone numbers and his office address, for the Petitioner to contact Counsel if he wanted to proceed with an appeal.

On cross-examination, Counsel said that he explained to the Petitioner the nature of all the charges against him. He said that he reviewed with the Petitioner the maximum and minimum penalties for each charge. Counsel recalled that he told the Petitioner that he could plead not guilty, and the State would be required to prove his guilt beyond a reasonable doubt. He said that the Petitioner understood all of this information. He said that he and the Petitioner discussed his right to a jury trial, his right to call witnesses on his own behalf, and his right to confront witnesses against him. He explained to the Petitioner that he would be able to question the confidential informant and ask possibly damaging and "embarrassing" questions of the informant. He said that he explained that the Petitioner could testify on his own behalf, but that he also had a right to not testify and that no one could hold that against him. Counsel said that he advised the Petitioner that his prior criminal record could damage his credibility if he were to testify, and Counsel told the Petitioner that the Petitioner would ultimately decide whether to testify. Further, Counsel said that he had the Petitioner sign a statement that he understood his right to testify, and that testifying would be against Counsel's advice. Counsel said that he told the Petitioner that he would act as Counsel throughout every stage of the criminal proceedings, if the Petitioner wished. Counsel said that he believed that the Petitioner understood the effect of the guilty pleas, and Counsel never felt that the Petitioner was not acting voluntarily or knowingly. He said that he felt there was a sufficient factual basis to support the guilty pleas, and the Petitioner had, in confidence, admitted his guilt to all but one of the offenses. Counsel denied that the Petitioner only paid his fees during their meetings at Counsel's office. He said that he explained that the Petitioner's sentences would be consecutive, and he explained to the Petitioner the difference between consecutive and concurrent, even drawing a time line for the Petitioner.

Counsel testified that he explained all aspects of the possible sentences, and he told the Petitioner that he faced seventy-one years in prison. He denied telling the Petitioner that a best interest plea was another way to plead not guilty. He said that he clearly explained to the Petitioner

that a best interest plea was effectively a guilty plea, and the only difference was "in [the Petitioner's] heart." Counsel said that the Petitioner appeared nervous and scared when they discussed the Petitioner's cases, but he denied that the Petitioner was so scared that he could not understand his rights and options. Counsel further testified that he had no indication that the Petitioner was unsatisfied with his sentence. He said that he estimated to the Petitioner that he would likely receive between eighteen and twenty-two years, and he said that, when the Petitioner received eighteen years, Counsel believed he "had done a good job."

Following this testimony, the post-conviction court denied the Petitioner's petition for post-conviction relief. The court stated:

[The Petitioner] contends that he is entitled to post[-]conviction relief in the form of vacating, by the Court, of the convictions that resulted from his guilty pleas.

He contends he did not understand the nature of his pleas; that he did not enter those pleas knowingly; and in part he claims that he was not given adequate representation or effective representation by [Counsel] . . . . He further contends that [Counsel] did not explain the consequences of those pleas.

After considering the exhibits, which are the transcriptions of the guilty plea and the sentencing hearing, and after considering the testimony of [the Petitioner] and the testimony of [Counsel] the Court finds that [the Petitioner]'s petition is without merit. [Counsel] provided services that are within the range of services that are required of lawyers who provide representation to criminal defendants.

The Court believes the testimony of [Counsel]. The Court does not believe the testimony of [the Petitioner] given the questions and answers that were posed and given both in the guilty plea colloquy and at the sentencing hearing. Petition is denied.

It s from this judgment of the post-conviction court that the Petitioner now appeals.

**II. Analysis**

The Petitioner contends that his guilty plea was involuntary and unknowing due the ineffective assistance of his Counsel. Specifically, the Petitioner asserts that the trial court failed to fully inform the Petitioner of the nature of the charges against him; failed to explain the maximum possible penalty for the offenses involved in the Petitioner's case; failed to ensure that the plea was not the result of force, threats, or promises; and failed to explain that the Petitioner's prior criminal record would enhance the Petitioner's sentence for the convictions. Additionally, the Petitioner argues that the plea was involuntary and unknowing because neither Counsel nor the trial court informed the Petitioner that the statute of limitations on the statutory rape charges had expired before the finding of the indictment in that case. The State counters that the Petitioner's pleas were both

knowing and voluntary. Further, the State contends that the Petitioner has waived his argument based on the statute of limitation because he raised this issue for the first time on appeal to this court. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). Upon review, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and

"should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

Our Supreme Court set forth the following standards pertaining to the constitutional requirements for valid guilty pleas:

> The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. Id. at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences.*" Id. at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280 (emphasis added).

State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). Further, the Court has explained that "a plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats,'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43), or if the defendant is "incompetent or otherwise not in control of [his] mental facilities" when the plea is entered. Id. at 904 (quoting Brown v. Perini, 718 F.2d 784, 788 (6th Cir. 1983)). In determining whether a plea is knowing and voluntary the court should examine the totality of the circumstances, including the following factors:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Powers v. State, 942 S.W.2d 551, 556 (Tenn. 1996) (quoting Blankenship, 858 S.W.2d at 904).

## A. Claims Based On Rule 11

The requirements set forth in <u>Boykin</u> and <u>Mackey</u> were incorporated into the Tennessee Rules of Criminal Procedure. Section (c) of Rule 11 of the Tennessee Rules of Criminal Procedure provides:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
>
> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and
>
> (2) If the defendant is not represented by an attorney, that he or she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed; and
>
> (3) That the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right against compelled self-incrimination; and
>
> (4) That if the defendant pleads guilty or nolo contendere there will not be a further trial of any kind except as to sentence so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and
>
> (5) That if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded, and if the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or false statement.

Additionally, Rule 11 section (d) provides:

> The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or the defendant's attorney.

Tenn. R. Crim. P. 11 (2003). However, the <u>Mackey</u> requirements that are not required by <u>Boykin</u>, are not constitutionally based. <u>State v. Prince</u>, 781 S.W.2d 846, 852-53 (Tenn. 1989). "It follows that any omissions, not required by <u>Boykin</u>, may be relied upon on direct appeal in appropriate cases but such omissions have no validity on the first or any subsequent post-conviction proceeding." <u>Id.</u> at 853; <u>see</u> <u>also</u> <u>Hicks v. State</u>, 983 S.W.2d 240, 247 n.10 (Tenn. Crim. App. 1998); <u>Sneed v. State</u>, 942 S.W.2d 567, 568-69 (Tenn. Crim. App. 1996).

Initially, we note that the Petitioner's claims that the trial court failed to adhere to certain requirements of Rule 11, specifically that the trial court erred when it failed to explain the maximum and minimum penalties for the charges, failed to advise the Petitioner that prior convictions could be used to enhance his sentences on the guilty plea convictions, and failed to inquire as to whether the guilty plea was a result of conversations with the district attorney, are not cognizable grounds for post-conviction relief because those requirements are supervisory, rather than constitutionally based. See Prince, 781 S.W.2d at 853; Hicks, 983 S.W.2d at 247 n.10; Sneed, 942 S.W.2d at 568. However, because the Petitioner argues that these errors combined with others to make his pleas involuntary and unknowing under the totality of the circumstances, we will briefly address these alleged errors.

The transcript of the guilty plea hearing clearly shows that the trial court discussed each of the charges against the Petitioner, and it stated the sentence range for each of those charges. Additionally, when the guilty plea hearing began, the State went over the charges and possible sentences for each offense. The trial court asked the Petitioner if he understood this information, and the Petitioner answered affirmatively. Likewise, the record reflects that the trial court substantially complied with the requirement that it advise the Petitioner that prior convictions could be used to enhance his sentence after the guilty pleas were accepted. The transcript of the plea hearing shows that the trial court explained, and even gave detailed examples of how the Petitioner's convictions resulting from the guilty pleas would be used to enhance his sentences for any future sentences, and the Petitioner stated that he understood this information. Additionally, the trial court informed the Petitioner that it would consider the Petitioner's pre-sentence report and any other evidence that the State might present at the sentencing hearing. There was also testimony that Counsel explained the sentencing considerations and the applicable sentence range to the Petitioner. Finally, the record shows that the trial court was aware that the pleas were a result of prior conversations between the assistant district attorney and Counsel. At the outset of the proceedings, Counsel explained to the trial court that the State had just made an offer for a plea agreement, and Counsel requested, and was granted, additional time to confer with the Petitioner. Further, throughout the proceedings, the plea agreement was discussed in open court by both the State and Counsel. Thus, these issues are without merit.

Similarly, the Petitioner's next contention, that the trial court erred when it failed to inquire whether the guilty pleas were the result of any force, threats, or coercion, is without merit. The constitutional requirements of Boykin and the mandates of Rule 11 do not require the trial court to specifically ask if the plea is free from any force, threats, or coercion. The rules only require that the trial court "by addressing the defendant personally in open court, determin[e] that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement." Tenn. R. Crim. P. 11(d). Thus, the trial court was required to: (1) personally and directly address the Petitioner in open court; and (2) determine that the plea was voluntary and free from force, threats, or promises. The record reflects that, although the trial court did not specifically ask the Petitioner if his plea was the result of force, threats, or promises, the trial court directly and personally addressed the Petitioner in open court and questioned the Petitioner about the voluntariness of his

guilty pleas. The trial court specifically explained the rights that the Petitioner would be waiving by pleading guilty. The trial court examined the Petitioner at length concerning the Petitioner's "best interests" plea, ensuring that the Petitioner understood that the legal effect of a best interest plea was identical to a guilty plea. The Petitioner told the trial court that he understood all of his rights, all the charges against him, and the possible sentences for his convictions, and the Petitioner informed the trial court that he wanted to waive his rights and plead guilty. Based on the record before us, we cannot say that the trial court failed to make a determination that the Petitioner's plea was free from force, threats, or promises.

The Petitioner has failed to prove by clear and convincing evidence that he received ineffective assistance of Counsel or that he was prejudiced by Counsel's representation. The post-conviction court specifically found that Counsel's testimony was credible, and it found the Petitioner's testimony lacked credibility. The Petitioner has failed to prove that the evidence preponderates against these finding by the post-conviction court. Further, the post-conviction court determined that the Petitioner received effective assistance of counsel and that his plea was knowing and voluntary. Based on the record before us, we find no error in the judgment of the post-conviction court. This issue is without merit.

## B. Statute of Limitations Claim

The Petitioner's final point of contention is that his plea was unknowing and involuntary because Counsel failed to recognize that the statute of limitations on the twenty-three counts of statutory rape had expired before the finding of the indictment,[3] and, thus, Counsel's representation was deficient and prejudiced the Petitioner.[4] We agree with the State that the Petitioner waived this argument by failing to raise it in his original or amended post-conviction petition. See Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004); Tenn. Code Ann. § 40-30-104(d) and -106(d) (requiring that a petition for post-conviction relief contain all the grounds for relief and the facts supporting those grounds).

The Petitioner further argues, however, that this Court should consider the issue under plain error. Plain error review is authorized by Tennessee Rules of Criminal Procedure 52(b), which provides:

[3]Statutory rape is sexual penetration of a victim by the defendant or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least four (4) years older than the victim. Tenn. Code Ann. § 39-13-506(a) (2003). Statutory rape is a Class E felony. Tenn. Code Ann. § 39-13-506(c). The statutory limitations period for Class E felonies is two years. Tenn. Code Ann. § 40-2-101(b)(4)(2003). The statute of limitations is intended to prevent undue delay and prejudice in prosecution, and it may be waived by the defendant. State v. Pearson, 858 S.W.2d 879, 887 (Tenn. 1993).

[4]The Petitioner first raised this ground for relief during the pendency of this appeal, in a motion to consider post-judgment facts. By an order dated December 30, 2004, we denied the motion to consider post-judgment facts as improper. In doing so, we explained that the Petitioner was effectively asking this Court to allow him to amend his petition for post-conviction relief to include a ground not raised or litigated at the trial level.

> An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.

According to the Tennessee Supreme Court, however, this rule does not apply to appellate review in post-conviction cases. State v. West, 19 S.W.3d 753, 757 (Tenn. 2000). In West, although the Court was analyzing an issue raised under the previous Post-Conviction Act, the Court explicitly stated that the holding applied equally to the current Post-Conviction Procedures Act. See Id. Accordingly, the Petitioner is not entitled to plain error review in this case. This issue is without merit.

## III. Conclusion

In accordance with the foregoing reasoning and authorities, the judgment of the post-conviction court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE